**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

XIAOWEI SONG,

              Petitioner,

   v.

JAMES JANECHA, et al.,

              Respondents.

Case No. EDCV 26-3896-AS

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

On July 13, 2026, Xiaowei Song (A# 240-500-106) ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that Respondents violated his Fifth Amendment due process rights by detaining him on December 9, 2025, without prior notice or a hearing, and denying him a constitutionally adequate custody determination since then. (Dkt. No. 1). He seeks immediate release from detention, among

other relief. (Id. at 20). The Petition is accompanied by an application for a temporary restraining order ("TRO"), which seeks the same relief on the further grounds that a licensed clinical social worker diagnosed Petitioner with delusional disorders on April 24, 2026, and the government raised a question as to his competency in his immigration proceedings soon after, which the immigration judge invoked as partial justification for his ongoing detention, but Petitioner still has not received any mental health treatment or competency evaluation. (Dkt. No. 3).

On July 21, 2026, Respondents filed a combined Answer to the Petition and response to the TRO Application, contending that Petitioner has no due process right to immediate release but is instead legally detained under 8 U.S.C. § 1226(a) and is therefore entitled only to a bond hearing, which he already received, and he has failed to exhaust administrative remedies by either requesting another bond hearing under § 1226(a) or appealing the denial of bond to the Board of Immigration Appeals. (Dkt. No. 10). Petitioner filed a Reply in support of the Petition on July 21, 2026, arguing that a post-deprivation bond hearing cannot cure the asserted due process violation, and lack of exhaustion does not bar his due process claims. (Dkt. No. 12).[1]

---

[1] Petitioner filed two versions of the Reply. (Dkt. Nos. 11-12). The Court cites his amended Reply (Dkt. No. 12) that was filed a few minutes after the initial version.

For the reasons stated below, the Petition and TRO Application are DENIED.[2]

**BACKGROUND**

Petitioner is a native and citizen of the People's Republic of China who lawfully entered the United States on an F-1 non-immigrant student visa on May 24, 2016, and enrolled at Ohlone College in Fremont, California. (Petition ¶¶ 21-22). Before and since his arrival, he has been actively involved in movements opposing the Chinese Communist Party, and his efforts have been publicized in media sources such as Voice of America and Radio Free Asia. (See id. ¶¶ 21, 23-25).

Petitioner's F-1 status was terminated on July 14, 2016, but he continued to live in the United States "openly, at a known address, under his own name, giving interviews to United States government-funded broadcasters," and he was not contacted or detained by immigration authorities for more than nine years. (See id. ¶ 28).

On December 9, 2025, at about 10:30 a.m., immigration agents conducting a planned surveillance operation in Yermo, California, identified Petitioner from a photograph and approached him during a traffic stop soon after to inform him that ICE had issued an administrative warrant for his arrest. (See id. ¶¶ 29-30; Answer

---

[2] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 4-6, 8).

Ex. 1 at 2). Without having provided Petitioner with any prior notice or opportunity to be heard, the agents arrested Petitioner and transferred him to an ICE facility where he was processed and served with a Notice to Appear charging him as deportable under section 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(C)(i). (Petition ¶¶ 31-32; Answer Ex. 1 at 2-3; Ex. 2). He was transferred to the Adelanto ICE Processing Center. (Petition ¶ 31).

On February 16, 2026, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture with United States Citizenship and Immigration Services. (Petition ¶ 27). The application remains pending. (Id.).

On June 16, 2026, Petitioner received a bond hearing before an immigration judge pursuant to Rodriguez v. Holder, Case No. CV 07-03239-TJH (RNB), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018),[3] and bond was denied based on the immigration judge's

_____

[3] Under the injunction in the Rodriguez class action, which remains in force in this District, a noncitizen detained under 8 U.S.C. § 1226 for over six months is entitled to a bond hearing at which the government has the burden to justify continued detention by proving by clear and convincing evidence that the noncitizen is a flight risk or danger to the community. See 2013 WL 5229795, at *2-3; see also Rodriguez v. Marin, 2020 WL 13348414, at *1 (C.D. Cal. Mar. 9, 2020) (affirming that the preliminary injunction in the Rodriguez class action continues to apply to individuals detained in the Central District of California under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c)); Rodriguez v. Marin, 2020 WL 13724475, at *1 (C.D. Cal. May 28, 2020) (denying motion to vacate preliminary injunction and decertify the class). On October 19,

determination that he is a flight risk.[4] (Petition ¶¶ 34-36, Ex. 5).

## DISCUSSION

Petitioner contends that due process entitles him to immediate release from ICE detention.[5] (See Petition at 11-20; Reply at 5). However, such relief is not warranted here.

Petitioner is currently subject to detention under 8 U.S.C. § 1226(a), which authorizes detention of noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); see Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process."). Detention under § 1226(a) is "discretionary" and "provides for release on bond or conditional parole." Avilez

---

2021, the Ninth Circuit reversed the district court in Rodriguez and remanded with instruction to vacate the injunction. See Rodriguez v. Barr, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021). However, the mandate has not issued because the case is currently pending a petition for panel rehearing or rehearing en banc. (See Ninth Circuit Case No. 20-55770, Dkt. Nos. 79-80).

[4] Before this "Rodriguez" hearing, Petitioner had requested a custody redetermination under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1226, but he then withdrew the request on March 16, 2026, allegedly because the record was "missing key evidence (including financial documentation, sponsorship, ties to the United States, if any, etc.)." (Answer Ex. 3).

[5] Petitioner expressly "does not seek, and does not consent to, an order directing a bond hearing in lieu of release." (Petition ¶ 61).

5

v. Garland, 69 F.4th 525, 530 (9th Cir. 2023). Section 1226(a) and its implementing regulations provide extensive procedural protections, including the right to bond hearings "before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1102 (C.D. Cal. 2025) (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022)), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), appeal filed, 9th Cir. Case Nos. 25-7958, 26-1044.

It is true that a post-deprivation bond hearing does not always suffice for immigration detainees subject to § 1226(a). In particular, as district courts in this Circuit have concluded, noncitizens who are re-detained after previously being released on an order of supervision have a right, under the Due Process Clause, to pre-detention notice and a hearing, and a post-deprivation bond hearing is not an adequate remedy for the failure to provide those pre-deprivation procedures; in such cases, therefore, the petitioners are typically granted immediate release from custody. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *4-6 (C.D. Cal. Feb. 3, 2026); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1166 (C.D. Cal. 2025). But this is not such a case, as Petitioner was not previously released from ICE custody on an order of supervision and had no due process right to a pre-detention hearing, and he otherwise has no due process right to immediate release from detention.

6

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause requires Respondents to provide him "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine what process he is due, the Court considers the following three factors from Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

7

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

As to the first factor, Petitioner's private interest in remaining out of custody is significant, given that he has lived in the United States continuously since May 2016. But that interest is limited, nonetheless, by his lack of legal status and the fact that he apparently was never expressly determined to merit being out of immigration custody. In this way, Petitioner's situation differs considerably from those noncitizens who were previously detained and then released from immigration custody. The government's express decision to release such individuals from custody creates "an implicit promise," upon which that individual may rely, that his or her liberty "will be revoked only if he [or she] fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). There was no implicit promise here, and any reliance on one would not have been reasonable. As noted, the government generally has authority to arrest and detain noncitizens pending a decision on their removal. 8 U.S.C. § 1226(a). Thus, while Respondents had previously refrained from detaining Petitioner,

and instead had permitted him to remain at liberty for many years, that prolonged liberty was nonetheless tenuous. It endured only under the threat of detention, without further cause or notice, due to Petitioner's lack of legal status.

As to the second Mathews factor, because Petitioner had not previously undergone an assessment of his status or a determination as to whether his release would pose a danger to the community or a flight risk, providing him with a post-detention hearing under § 1226(a), rather than a pre-detention hearing (or immediate release), would pose only a low or moderate risk of erroneous deprivation of liberty. See also Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings). Again, in this respect his situation differs significantly from those who were previously released from detention upon a finding that they do not pose a danger or flight risk. See, e.g., Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))).

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and thus in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens] will be successfully removed.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). Where Petitioner had not previously been subject to removal proceedings, had not been assessed for flight risk or danger, and apparently had no contact with immigration authorities for many years, the government's interest in detaining him at least initially was significant.[6] Cf. Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

On balance, the Mathews factors suggest that Petitioner, unlike those who are re-detained after being released on bond, was

[6] It is true that, as district courts have noted, "bond hearings require little expenditure of resources." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025). However, if courts were to require the government to provide pre-detention hearings for all noncitizens who, like Petitioner, were prior visa holders but have no present legal status and have resided in the United States for many years without being detained or monitored, the government's burden and expense may indeed be substantial, both in terms of the factual inquiry needed to determine whether each noncitizen arrestee meets these criteria as well as the large number of pre-detention hearings that would need to be held (to avoid otherwise having to release those who may pose a danger or flight risk).

not entitled to a pre-detention hearing, and his due process rights are adequately addressed by a post-deprivation bond hearing pursuant to § 1226(a), where the government has the burden to prove by clear and convincing evidence that Petitioner is a danger or flight risk. See, e.g., Quinonez Herrera v. Mullin, 2026 WL 915184, at *3 (C.D. Cal. Apr. 3, 2026) (petitioner who was not on supervised release when detained failed to demonstrate that due process entitled her to release rather than a bond hearing under § 1226(a)); Okoth v. Kaiser, 2026 WL 45199, at *2 (E.D. Cal. Jan. 7, 2026) (rejecting petitioner's claim that he was entitled to a pre-detention hearing where, unlike in cases involving noncitizens who were re-detained while on supervised release during the pendency of removal proceedings, petitioner had not been previously detained and released on bond); Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) ("[T]he Section 1226 framework typically provides for post-detention, rather than pre-deprivation, bond hearings. If Section 1226 and its regulations are followed, this provides for sufficient process, as detentions will only be made upon an initial DHS determination that an individual is a flight risk or poses a danger to the community." (citing Rodriguez Diaz, 53 F.4th at 1196)).

As indicated above, Petitioner received a bond hearing before an immigration judge (or "IJ") on June 16, 2026. (See Petition ¶¶ 34-36, Ex. 5). At the hearing, Petitioner presented the following:

a sworn declaration of support from Karen Hester, a United States citizen who has lived at the same address

in Pahoa, Hawaii for nine years and who pledged under penalty of perjury to provide him housing, living expenses, financial support for his case, and to ensure his compliance with all ICE and immigration court requirements; her passport; her 2025 tax return reflecting an adjusted gross income of $198,994; and bank records showing approximately $68,663 in a checking account and three certificates of deposit totaling approximately $235,522.

(Petition ¶ 35). He also presented "the documentary record of his anti-[Chinese Communist Party] activism." (Id.).

The IJ denied bond upon finding "by clear and convincing evidence[] that [Petitioner] is a flight risk for which no amount of bond can mitigate or ameliorate the risk." (Petition Ex. 5 at 1). The written decision sets forth several reasons in support of this finding: (1) that Petitioner "has no family members or ties to the United States" (2) that he "has no longtime fixed address," since he indicated prior to detention that he "lived in a trailer park in exchange for serving as 'security' at the property"; (3) that the government in his immigration proceedings raised a question as to Petitioner's competency, which is relevant to whether if released on bond he "would be with an individual who could monitor him and provide him with the necessary medical care for his mental and physical well-being"; (4) that Petitioner's proposed sponsor, who was located through a non-governmental organization, was not reliable or credible for several reasons;

and (5) and Petitioner's visa overstay "reflects an unwillingness and/or inability to follow the law with respect to immigration." (Id. Ex. 5 at 1-2).

Petitioner takes issue with these reasons because, according to him, they amount to "a finding that Petitioner is friendless, homeless, poor, and possibly incapacitated." (Id. ¶ 37). He also asserts that they are based on conditions "that the detention itself created." (Id. ¶ 53).

However, this Court cannot reweigh the evidence or second-guess the IJ's findings of fact and discretionary determinations regarding detention or bond. See 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the grant, revocation, or denial of bond or parole."); see also Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (court cannot reweigh evidence in reviewing IJ's bond decision). Instead, the IJ's decision on this matter presents a mixed question of law and fact which habeas courts review under an "abuse of discretion" standard. Martinez, 124 F.4th at 779-80 (citing Wilkinson v. Garland, 601 U.S. 209 (2024)). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." Id. at 785 (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to

whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)) (internal citation and quotation omitted).

Petitioner fails to demonstrate that the IJ's decision applied the wrong legal standard, is unsupported by sufficient evidence, or is clearly erroneous in any respect. Rather, the grounds cited in the IJ's decision reference appropriate factors and reasonably support a finding that Petitioner is a flight risk.[7] Contrary to Petitioner's suggestion, the IJ did not deny release based on Petitioner's "inability to pay" a bond. (See Petition ¶ 53). Moreover, though Petitioner asserts that the IJ was required

---

[7] "To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). The factors that an IJ "may" consider "include any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id. (quoting Guerra, 24 I. & N. at 40). An IJ has "broad discretion" in weighing these factors, "as long as the decision is reasonable." Guerra, 24 I. & N. Dec. at 40.

14

to consider alternatives to detention, "an IJ need only consider 'alternative conditions to release' once the IJ determines that the detainee is 'neither dangerous nor so great a flight risk as to require detention without bond,'" Perez v. Wolf, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) (quoting Hernandez v. Sessions, 872 F.3d 976, 991 (9th Cir. 2017)); see also Martinez, 124 F.4th at 786 (rejecting argument that IJ must consider options for conditional release after finding § 1226(c) detainee posed a danger to the community; finding no such requirement in either Singh or Hernandez v. Sessions).

Furthermore, Petitioner fails to show that he merits relief here based on his apparent diagnosis of a delusional disorder. (See TRO Application at 4-17). Although Petitioner undoubtedly should receive a proper medical evaluation and treatment, the record does not suggest that he is at risk of any significant harm in the meantime such that he would merit immediate release from detention. To the extent Petitioner seeks other relief on this basis, the claim is improperly brought in this § 2241 action. See, e.g., Malakhov v. Scott, 2026 WL 809881, at *3 (W.D. Wash. Mar. 24, 2026) (where petitioner failed to show that inadequate medical care made his immigration detention unconstitutional, the claim was "better read as attacking the conditions of his confinement (that those conditions harm his health) and not its fact or its duration," but "these types of claims, if they are intended as the sole means of release, cannot be brought via a habeas petition"); Salazargarza v. Semaia, 2025 WL 3165160, at *3 n.2 (C.D. Cal. Oct. 3, 2025) ("To the extent Petitioner attempts to challenge the conditions of his

15

confinement by arguing he is not receiving proper medical care, he cannot do so in a Section 2241 petition." (citing Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000); Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1991))).

**ORDER**

Accordingly, the Court DENIES the Petition and TRO Application.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 23, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

16